UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOHN BROWN,

                Petitioner,                  19-cv-11557 (PKC)
                                                                     17-cr-789 (PKC)

      -against-                                    ORDER

UNITED STATES OF AMERICA,

                Respondent.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Petitioner John Brown, proceeding pro se, moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. On February 15, 2019, pursuant to a plea agreement with the government, Brown pleaded guilty to four counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951. (Doc 60).[1] Following his guilty plea, the Court sentenced Brown principally to 72 months' imprisonment. Brown did not appeal his sentence.

        In the current motion, Brown argues that he received ineffective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution based on his counsel's failure to file a notice of appeal. He also asserts that counsel was constitutionally ineffective for not pursuing certain arguments favored by Brown relating to the suppression of physical evidence. For reasons that will be explained, Brown's motion will be denied.

        BACKGROUND

        Brown was arrested at his home on November 29, 2017. (Jan. 10, 2019, Tr. 37; Doc 56). A search warrant was issued for Brown's home the next day, and during the search the

---

[1] Citations to the record are to docket number 17-cr-789 unless otherwise noted.

government recovered certain physical evidence. (Sept. 12, 2018, Tr. 12; Doc 34). Subsequently, on December 21, 2017, Brown was charged in a five-count indictment with committing four gunpoint robberies at commercial establishments in New York City. (Doc 6).

On February 15, 2019, Brown entered a plea of guilty to Counts One through Four of the Indictment for Hobbs Act robbery. At the plea allocation, the Court explained that Brown had entered into a plea agreement with a stipulated Guidelines range of 70 to 87 months, but that the Court had its own independent obligation to calculate the correct Guidelines range, which could vary from the terms of the plea agreement. (Feb. 15, 2019, Tr. 33–34; Doc 60). The Court further noted that in the plea agreement Brown waived his right to appeal or collaterally attack a sentence within or below the stipulated Guidelines range. (Feb. 15, 2019, Tr. 33–34; Plea Agreement, Jan. 18, 2019, at 5). At his plea allocation, Brown expressed his understanding of the waiver. (Feb. 15, 2019, Tr. 33–34).

On May 31, 2019, the Court imposed a sentence within the stipulated Guidelines range of 72 months' imprisonment. (Doc 70). At sentencing, the Court advised Brown that he had the right to appeal and that the Clerk of Court could prepare and file a notice of appeal on his behalf immediately. (May 31, 2019, Tr. at 38; Doc 72). Judgment was entered that same day and no notice of appeal was ever filed.[2]

DISCUSSION

On December 13, 2019, Brown filed the current motion pursuant to 28 U.S.C. § 2255 to vacate his sentence. (19-cv-11557, Doc 1). Brown subsequently requested leave to file a "supplemental 2255 motion." (19-cv-11557, Doc 5). Both of Brown's submissions assert that his counsel was constitutionally ineffective.

---

[2] Although the waiver appears to bar Brown's motion, because the government has not argued the waiver point, the Court declines to base its decision on the apparent waiver.

To prevail on an ineffective assistance of counsel claim, Brown "must demonstrate that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." McCoy v. United States, 707 F.3d 184, 187 (2d Cir. 2013) (citing Strickland v. Washington, 466 U.S. 668, 687–88 (1984)). In deciding whether counsel's representation fell below the objective standard of reasonableness, there is a "strong" presumption that counsel's performance was adequate and that the attorney "'made all significant decisions in the exercise of reasonable professional judgment.' " Jackson v. Conway, 763 F.3d 115, 152 (2d Cir. 2014) (quoting Cullen v. Pinholster, 563 U.S. 170, 189 (2011)). A petitioner "bears a 'heavy' burden" to establish that an attorney's performance "was unreasonable under 'prevailing professional norms.'" McCoy, 707 F.3d at 187 (quoting Harrington v. United States, 689 F.3d 124, 129–30 (2d Cir. 2012)).

    A.  <u>Counsel was not constitutionally ineffective for failing to file a notice of appeal.</u>

Under Rule 4(b), Fed. R. App. P., Brown was required to file his notice of appeal within 14 days after the entry of judgment. In Brown's case, no notice of appeal was ever filed.

The Supreme Court has "long held that a lawyer who disregards specific instructions form the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). The filing of a notice of appeal is a "purely ministerial task," and a defendant has "the ultimate authority to decide whether to take an appeal." Garza v. Idaho, 139 S. Ct. 738, 745–46 (2019) (internal quotation marks and citations omitted).

As to prejudice, "where counsel's error leads to 'the forfeiture of a proceeding itself,' prejudice will be presumed." Campusano v. United States, 442 F.3d 770, 775 (2d Cir.

3

2006) (Sotomayor, J.) (quoting Flores-Ortega, 528 U.S. at 476–77).  This presumption of prejudice "applies regardless of whether the defendant has signed an appeal waiver." Garza, 139 S. Ct. at 742.  Moreover, "prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims.' " Id. at 749–50 (quoting Flores-Ortega, 528 U.S at 484).

When there is a dispute over whether a defendant specifically instructed his attorney to file an appeal, the district court must conduct a hearing and determine as a matter of fact whether an appeal was requested.  Campusano, 442 F.3d at 776.  However, "the district court has discretion to determine if a testimonial hearing will be conducted." Id. (citing Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001)) (noting that the Supreme Court has held that, "although a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in a district court for a full hearing"); see also Daragjati v. United States, 598 Fed App'x 50, 52 (2d Cir. 2015) (instructing the district court on remand to "determine as a matter of fact whether [defendant] requested a notice of appeal" but recognizing that a "hearing need not be testimonial"); Lopez v. United States, 03-cr-317, 2006 WL 2020389, at *3 (S.D.N.Y. July 12, 2006) (Kram, J.) ("Although the district court is required to engage in fact-finding to determine if an appeal was requested, Campusano specifically recognizes that 'the district court has discretion to determine if a testimonial hearing will be conducted' in order to make this finding.").

In a sworn declaration, Brown states that "[u]pon conclusion of sentencing I ordered my counsel . . . to file a notice of appeal on my behalf as I spoke [with] my family before exiting the Court room on May 31[,] 2019."  (19-cv-11557, Doc 1 – Ex. B).  Brown's version of events is directly contradicted by his counsel, who submitted a declaration denying that Brown asked him to file a notice of appeal on the day of sentencing.  (Doc 82 ¶ 9).  Counsel recalls that

4

Brown was able to speak with his family and girlfriend for a brief period after sentencing. (Id. ¶ 11). While counsel does not recall if he was involved in those conversations, he attests that Brown never asked him to file an appeal and notes more generally that Brown, his family and his girlfriend were pleased with the sentence. (Id.) Counsel further states that "I am well aware of my obligation to file a notice of appeal upon request of a client, regardless of any appellate waiver or my view of the viability of any potential issues. As such, I would have filed a notice of appeal upon request." (Id. ¶ 13).

According to Brown, he was placed in solitary confinement after being sentenced with "severely limited" access to counsel. (19-cv-11557, Doc 1 at 14).[3] Brown states that he was released from solitary confinement on July 22, 2019. (Id. at 15). On July 23, 2019, Brown wrote to his counsel that "I still haven't received my transcripts or sentencing mins I am now in – FCI Cumberland[.] Can you plz forward them to me[?] Further were you able to fill and [sic] appeal on my behalf? Please get back to me ASAP." (Id. – Ex. A). In the relevant part, counsel responded that "[a]s to an appeal, we did not file a notice of appeal. It has been almost two months since judgment so I believe our time has run. Remember that you waived your right to appeal in the plea agreement. Do you believe there are any appellate issues remaining?" (Id.) On August 16, 2019, after additional correspondence, counsel stated "[t]o clarify you did not ask me to file a notice of appeal." (Id. – Ex. B). Brown responded that he asked his counsel to "file an appeal right after sentencing in the Court room." (Id.) Brown further noted that his family heard the request.

The Court finds Brown's assertion that he asked his attorney to file a notice of appeal at the time of sentencing not to be credible. Brown asserts that his request was in the

---

[3] Brown makes this assertion in his brief and not a sworn declaration.

presence of family members, but he has failed to produce any declarations from such individuals supporting his account. In response, counsel credibly asserts that Brown never asked him to file a notice of appeal on the day of sentencing. Counsel attests that he has been in federal criminal practice for over 25 years and was well aware of his obligation to file an appeal if asked, notwithstanding the appellate waiver in the plea agreement. (Doc 82 ¶ 11). Moreover, the subsequent written communications between Brown and his counsel do not support Brown's account. In those emails, counsel plainly stated that Brown never asked him to file a notice of appeal and indicated that he had not discussed an appeal or appellate issues with Brown since the day of sentencing. (See 19-cv-11557, Doc 1 – Exs. A & B). Counsel's account is corroborated by the fact that he "counseled Mr. Brown repeatedly about the appellate waiver during our thorough review of each version of the plea agreement, including the ultimate agreement reached." (Doc 82 ¶ 6). Brown also confirmed his understanding of the waiver at his plea allocution when specifically asked by the Court. (Feb. 15, 2019, Tr. 33–34).

In this case, the Court concludes that holding a full-scale evidentiary hearing "would add little or nothing to the written submissions." Chang, 250 F.3d at 86; see also, Rodriguez-Francisco v. United States, 15-cv-8843, 2016 WL 7048716, at *5 (S.D.N.Y. Dec. 2, 2016) (Briccetti, J.) (finding without a testimonial hearing on a section 2255 motion that petitioner did not specifically request that his counsel file a notice of appeal); Colon v. United States, 07-cv-2172, 2010 WL 1644260, at *6 (S.D.N.Y. Apr. 21, 2010) (Jones, J.) (same); Paulino v. United States, 476 F. Supp. 2d 395, 397 (S.D.N.Y. 2007) (Marrero, J.) (same). On the current record, the Court finds that Brown did not inquire of counsel about filing a notice of appeal until his written communication of July 23, 2019. The Court therefore concludes that counsel's performance was not ineffective for failing to file a notice of appeal.

In addition, Brown appears to argue that his counsel was constitutionally deficient for failing to consult with him regarding an appeal. (19-cv-11557, Doc 1 at 16–17). As noted above, the Court finds that counsel did consult with Brown regarding the appellate waiver in his plea agreement. Because Brown is proceeding pro se, the Court will construe his motion liberally and address whether counsel was deficient for failing to consult with Brown regarding an appeal at or after the time of sentencing.

In Flores-Ortega, the Supreme Court held:

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

528 U.S. at 480. "In making this determination, courts must take into account all the information counsel knew or should have known." Id.

In Brown's case, there is no reason to think that a rational defendant would want to appeal. Brown's current motion identifies no grounds for a potential appeal, non-frivolous or otherwise. Moreover, Brown's plea agreement contained an appellate waiver if he were sentenced to a term of imprisonment that was within or below the stipulated Guidelines range, as occurred in this case. Id. at 480 ("Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings."); accord Sarroca v. United States, 250 F.3d 785, 788 (2d Cir. 2001). At sentencing, the Court instructed Brown on his right to appeal and the limited timeframe for filing a notice of appeal. (May 31, 2019, Tr. at 38). Lastly, for reasons already explained, the Court finds that Brown had not reasonably demonstrated to counsel that

he was interested in appealing until July 23, 2019.  This was well after the time for his appeal had passed.  Accordingly, Brown cannot show ineffective assistance of counsel based on a failure to consult with him regarding an appeal.

  B. <u>Brown's remaining arguments do not establish that his counsel was ineffective.</u>

    As a preliminary matter, the Court construes Brown's supplemental 2255 motion as a motion to amend.  <u>Ching v. United States</u>, 298 F.3d 174, 177 (2d Cir. 2002).  The government does not contest Brown's proposed amendments and responds substantively to the arguments raised in the supplemental motion.  Given Brown's petition was filed <u>pro se</u> and the government's non-objection, the Court will grant Brown's motion to amend.  See <u>Id.</u> ("The general concern that civil plaintiffs have an opportunity for a full adjudication of their claims is particularly heightened in the AEDPA context, where the gatekeeping provisions of the statute stringently limit a petitioner's ability to raise further issues in a subsequent action."); <u>Wilson v. United States</u>, 16-cv-4994, 2019 WL 3752476, at *3 (S.D.N.Y. Aug. 8, 2019) (Nathan, J.) ("[Defendant's] initial petition was filed while he was representing himself <u>pro se</u> and in the AEDPA context, particular leeway should be given to amend an initial petition that was filed <u>pro se</u>.").

    Brown's supplemental motion asserts that his counsel was ineffective for failing to adequately pursue legal arguments favored by Brown concerning the seizure of physical evidence.  Over the course of the case, Brown personally raised legal arguments with the Court and identified disagreements with counsel over strategy.  On August 23, 2018, following the receipt of a series of letters from Brown, the Court issued an order stating that "[b]ecause defendant Brown is represented by counsel in this case, he should direct his communication regarding the merits of the case to his counsel and not to the Court."  (Doc 32).  At the next

conference on September 12, 2018, Brown told the Court that his counsel was refusing to file certain motions.  (Sept. 12, 2018, Tr. 3).  The Court stated that counsel has an obligation to confer and should make any non-frivolous motions that a client wishes to make.  (Id.)  Counsel confirmed that he understood his obligations: "I recognize that not all defendants' motions necessarily win, but I do believe I have an ethical obligation to present to the Court matters that are in some way supported by the facts and the law and that are meritorious in the sense that they're part of the practice of law and I think may achieve a victory."  (Sept. 12, 2018, Tr. 7–8).  Counsel further noted that he consulted with Brown regarding the appropriate motions to make and also told him that an attorney makes the ultimate strategic choice regarding which motions to pursue.  (Id.)

Brown, through his counsel, did in fact file a motion to suppress evidence obtained in connection with the arrest of Brown and the fruits derived from it.  (Doc 36).  On November 28, 2018, the Court heard the parties orally on this motion.  (Doc 47).  The Court held a second evidentiary hearing with testimony on January 10, 2019, on Brown's arguments seeking to suppress the fruits of his warrantless arrest at his home, including pursuant to the search warrant for his home issued the day after Brown's arrest.  The Court concluded that the warrantless arrest and the protective sweep performed by law enforcement after entering Brown's home were lawful.  (Jan. 10, 2019, Tr. 109–13; Doc 56).  It further noted that there was probable cause for Magistrate Judge Debra Freeman to issue a search warrant for Brown's home on November 30, 2017.  (Id.)  The Court therefore denied Brown's motion to suppress.  (Id.)

Brown's ineffective assistance arguments amount to challenges of his counsel's strategic choices on the legal arguments to make regarding the seizure of physical evidence. "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible

9

options are virtually unchallengeable,' Strickland, 466 U.S. at 690; and even strategic choices made after less than complete investigation do not amount to ineffective assistance—so long as the known facts made it reasonable to believe that further investigation was unnecessary." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005).

    First, Brown asserts that counsel was deficient for not requesting that the government produce videos from the night of Brown's arrest. In fact, Brown's counsel did ask the Assistant United States Attorney ("AUSA") whether any such videos existed and requested that the AUSA state his understanding on the record. (Nov. 28, 2018, Tr. 32–33; Doc 47). The AUSA represented that he was not aware of any videos of Brown's arrest taken by law enforcement. (Id.)[4] There is no evidence that a video exists from the night of Brown's arrest. Counsel for Brown made a reasonable investigation regarding the existence of a video and made the strategic choice not to pursue the matter further on the motion to suppress.

    Second, Brown argues that his counsel was deficient for not arguing that the government fabricated certain statements or tampered with evidence. Specifically, Brown takes issue with counsel's refusal to pursue arguments on the circumstances surrounding Brown's request for a "white kufi" on the night of his arrest and that the government tampered with the

---

[4] At the November 28, 2018 hearing, the Court also requested that the AUSA confirm whether the New York State parole officers present on the night of Brown's arrest possessed a video, but there does not appear to be any confirmation in the record that the AUSA asked. But even if Brown's counsel was deficient for failing to follow up with the AUSA, Brown cannot establish prejudice. There is no evidence in the record that Brown would not have accepted a guilty plea but for his counsel's failure to follow up regarding the existence of a potential video. See Lee v. United States, 137 S. Ct. 1958, 1965 (2017) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) ("[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "). On the contrary, the record at Brown's plea allocution demonstrates that even though Brown noted there were disagreements with counsel regarding strategy, he was aware of the nature of the evidence against him and knowingly considered his options in the case. (Feb. 15, 2019, Tr. at 7–11).

location of a jacket in Brown's home.[5]  Brown's allegations of fabrication and tampering are wholly unsupported by evidence and are speculative.

For reasons explained, Brown's disagreements with counsel regarding strategy do not constitute ineffective assistance of counsel under Strickland.

CONCLUSION

Brown's petition for relief pursuant to section 2255 is DENIED.  The Clerk is directed to close the case (19-cv-11557) and to terminate the motions.  (Docs 1 and 5).  The Clerk is also directed to terminate the related motions in the criminal case.  (17-cr-789, Docs 74, 78 & 81).

The Clerk is directed to mail a copy of this Order to Brown and note service on the docket.  The government shall mail Brown copies of all unreported decisions cited herein.

Brown has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue.  28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

---

[5] The Court notes that Brown's counsel did in fact argue that evidence should be suppressed because of a dispute as to the location of the jacket. (Jan. 10, 2019, Tr. 110).

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
April 1, 2021